## In re Green Mountain Power Corp. Rate Filing

[428 A.2d 1134]

No. 214-80

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and
Smith, J. (Ret.), Specially Assigned

Opinion Filed February 26, 1981

*Sheehey & Brue* and *Douglas G. Hyde,* Burlington, for Petitioner.

*Donald L. Rushford* and *Joseph M. Kraus,* Law Clerk (On the Brief), Rutland, and *Allen Martin,* St. Johnsbury, for amici curiae Central Vermont Public Service Corp. and Vermont Electric Cooperative, Inc.

*Lisman & Lisman,* Burlington, and *Gerald R. Tarrant,* Montpelier, for Public.

**Barney, C.J.** On October 11, 1979, the power company filed a notice of rate change with the Public Service Board. On

November 5, 1979, the Board suspended the rates as authorized under 30 V.S.A. § 226(a). The proposed rate increase represented a projected revenue increase of 21.1 per cent.

On December 5, 1979, the power company filed a second notice of rate change proposing an additional rate increase of 6.6 per cent. On December 28, 1979, the Board suspended this rate filing also. At the commencement of hearings on April 15, 1980, in response to a motion by counsel for the public, the Board dismissed the October 11 rate filing. It seems to have then treated the matter as a single rate change request based on the December filing. Hearings on rate relief were in progress at the time of this appeal. The power company sought to appeal the dismissal of the October filing.

█ The chairman has certified two questions for review, under the authority of V.R.A.P. 13(d). They are:

1. Is the dismissal by the Public Service Board of the notice of rate filing by Green Mountain Power Corporation on October 11, 1979, an appealable decision, in light of the subsequent rate filing on December 5, 1979?

2. Did the Public Service Board err in dismissing the notice of rate filing by Green Mountain Power Corporation on October 11, 1979, for lack of compliance with the Rules of the Public Service Board relating to filing for a change in rates?

The first question must be answered "yes." The statute under which the filing was made and which gave the Public Service Board the authority to suspend the immediate operation of the rates, 30 V.S.A. § 226, gives a right of recoupment to the power company in such cases if rate relief is later shown to be justified. The recoupment period begins at the time of filing of the rate request.

Thus, a second filing of a separate rate request at a later date cannot encompass the recoupment right generated by the first filing. At least that much of the possible relief is foreclosed by the dismissal, irrespective of other relief later granted. In this case the matter is not de minimis, since the power company estimates a possible loss of well over a million dollars. In any event, without regard to the exact measure of relief, it is clear that dismissal, if it was to take place, is, in

its consequences, equivalent to a final order and appealable. See *Beam* v. *Fish,* 105 Vt. 96, 97–98, 163 A. 591, 592 (1933).

This is not to say that it is improper to combine or consolidate evidentiary hearings for the two proposed rate increases. The unnecessary duplication involved in separate hearings is too apparent to require further comment. The parties and the Board would be charged, however, with the responsibility of marshalling and allocating the proofs accordingly as they pertain to the different rate requests.

The second issue goes to the adequacy of the October filing for purposes of having it considered by the Board. The company bluntly contends that its filing complies with both the statute and the rule of the Board. The pertinent part of 30 V.S.A. § 225 provides as follows:

> A change shall not thereafter be made in any such schedules, including schedules of joint rates or in any such rules and regulations, except upon thirty days' notice to the board and such notice to parties affected by such schedules as the board shall direct. All such changes shall be plainly indicated upon existing schedules, or by filing new schedules in lieu thereof thirty days prior to the time the same are to take effect. (This is the statute as it appeared before the 1980 amendment, which does not apply here.)

The documents filed by the power company stated the amount of relief requested and contained schedules showing the changes as they applied to each class of customers, kilowatt hour sales by rate classification, present and proposed revenues, and the amount and percentage of rate increases. It is not contended, and could not be, that the rate filing is insufficient under the statute. Beyond stating the amount of relief requested and containing the relevant schedules, the filing set out the reasons the company needed rate relief. It contended that costs of providing service had outrun revenues, and that the return on investment had declined to the detriment of stockholders' equity, handicapping the company's ability to attract new capital as well as to maintain adequate service.

In implementation of 30 V.S.A. § 225, the Board, under the authority of 30 V.S.A. § 11(a), passed some rules of practice. Rule 6 follows the directives of § 11(a)(1) which governs the

presentation of exhibits and testimony at the hearing on the rate change. Rule 3(f) is the Board's supplementation of 30 V.S.A. § 225, quoted above. It requires that at the time a new rate request is filed, the utility is required to submit

> full justification therewith in writing, including but not limited to information indicating the number of customers whose rates increase, decrease or remain the same, the amount of any such change, and the effect on the applicant's annual operating revenues. . . .
>
> The Board, in its discretion, may reject the filing of any petition absent compliance with this rule.

The Board, in granting the public's motion to dismiss, stated that it was acting under the last provision of the quoted rule, holding that the failure, in the Board's judgment, to file full justification for the increase supported dismissal. It also indicated that what it characterized as two-step rate filings are not in the public interest, and that it viewed the December filing as a substitute for the October filing.

As has already been noted, separate rights accrue under each filing. Those rights may fail for lack of adequate support in the evidence, but the Board has no authority to extinguish them by treating the second filing as a substitute for the first, without support from proof or agreement of the parties.

It is certainly true that the filing of a new request for rate change during the pendency of a prior one may appear redundant, but situations come immediately to mind where the financial health of the utility would require it. A company seeking relief from inflation might suddenly, in the midst of proceedings, be faced with an unexpected and expensive period of power purchase because of a cutoff of usual sources, such as Niagara power or nuclear power. This Court has held that the road to rate change is via proceedings before the Board, *In re Allied Power & Light Co.*, 132 Vt. 354, 360, 321 A.2d 7, 10 (1974), and so long as the statutes require that utilities notify the Board of proposed rate changes at least 45 days before putting them into effect, 30 V.S.A. § 225 (Cumm. Supp. 1980), two-step requests will remain a prospect and are not prohibited.

Coming back to the dismissed October request, the question remains whether or not it was deficient in a way sufficient to justify dismissal. The action of the Board cannot be taken as based on the failure to furnish evidence, since that stage of the proceedings had not been reached at the time the request for increase was filed. Both 30 V.S.A. § 11(a)(1) and PSB Rule 6 call for the filing of evidence by the utility after the suspension of rates by the Board. Certainly no grounds for dismissal based on a failure to substantiate the increase by testimony and proof can be resorted to before that proof has been presented.

So the failure, if there be one, must rest on a shortcoming in fulfilling Rule 3(f) in a particular that is within the power of the Board to demand as a prerequisite to initiating a rate hearing. It is just here that the proceedings are flawed. Analogies to civil pleadings before ordinary trial courts are not amiss.

The relevant statutory provisions in 30 V.S.A. § 225 set out the substantive allegations and information necessary to raise an issue before the Board. 30 V.S.A. § 11(a) indicates that the Board may make appropriate rules with respect to the form or procedural aspects of raising the rate issues. However, the function of the filing of the proposed rate change is to provide notice of the rate relief sought, notice of the reasons for seeking it, notice to the customers affected, and notice of the consequences on the company's financial situation. These functions are evidenced by the language of 30 V.S.A. § 225 which says that changes in rate schedules shall not be made "except upon thirty days' notice to the board and such notice to parties affected by such schedules as the board shall direct." Notice is to be distinguished from proof, which is provided for under a separate statute, 30 V.S.A. § 11(a)(1), and which is presented in connection with a hearing of the evidence relevant to acceptance or rejection of the rate change.

Like pleadings, petitions to the Public Service Board can be defective, such as those that seek relief that is beyond the jurisdiction of the Board or that do not set out any basis for the invocation of the Board's jurisdiction. In such cases rejection by dismissal or return for amendment may be appropriate. Dismissal for insufficiency of allegation is, however,

not the same as dismissal for insufficiency of evidentiary proof. Dismissal for insufficiency of proof can come only after the petitioner has had the opportunity to present his supporting evidence.

Here, it appears from the record before us and the brief filed on behalf of the public that the October filing was dismissed because of a shortcoming in its presentation of evidentiary facts. Such a decision can only be anticipatory, and therefore improper, since the full presentation of evidence was yet to come.

The misconception was further evidenced, first, by the initial acceptance of the filing of October 11 and subsequent suspension, and second, by the filing and reception of an affidavit as part of the public's motion to dismiss. The public argues that it submitted the affidavit to bring facts before the Board. This is certainly consistent with the tenor of its motion to dismiss, ultimately granted, since the public bases its contention on what it claims to be the absence of "qualified and quantified information," thereby denying "the Board the ability to determine whether the rates proposed in the Notice (sic) are just, reasonable, sufficient and not discriminatory." This is the ultimate question before the Board, to be determined on the evidence after full hearing, however, not on a motion on the pleadings.

There is a further contention that must be responded to. The public repeatedly speaks of a choice before the Board in these terms: either the Board must allow the rates to become immediately effective; or it must suspend the filing, which would give the company a right to recoup "as of a date on which no justification for rate relief may have existed." In the first place, no recoupment will occur unless the right to the rate increase is established by the evidence. If the proof doesn't measure up, there will be nothing to recoup. Furthermore, the alternatives are not as restrictive as stated in the motion. They need no development here, since they are fully set out in *In re New England Tel. & Tel. Co.*, 131 Vt. 310, 315–16, 305 A.2d 598, 601 (1973).

*Each of the certified questions is answered in the affirmative, and the cause is remanded to the Public Service Board.*